## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Allen Systems Group, Inc., *et al.*,[1] | ) Case No. 15-10332 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS, (II) WAIVING THE REQUIREMENTS OF
BANKRUPTCY CODE SECTION 345(B), AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B,** respectively: (I) authorizing, but not directing, the Debtors to (a) continue to operate their cash management system as described herein (as defined, the Cash Management System), (b) honor certain prepetition obligations related thereto, (c) maintain existing business forms, and (d) continue to perform intercompany transactions consistent with historical practice; (II) waiving the requirements of 11 U.S.C. § 345(b); and (III) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:[2]

### Jurisdiction

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Allen Systems Group, Inc. (4496); ASG Federal, Inc. (1773); and Viasoft International, LLC (9761).  The mailing address for all of the Debtors is: 708 Goodlette Road North, Naples, Florida 34102.

[2]     The facts and circumstances supporting this Motion are set forth in the *Declaration in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory bases for the relief requested herein are sections 105, 345, 363, 364, 503, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2015-2 and 9013-1(m).

### Relief Requested

4.       By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B,** respectively: (I) authorizing, but not directing, the Debtors to (a) continue to operate their Cash Management System, substantially as illustrated on **Schedules 1 and 2** annexed to **Exhibit A** attached hereto, (b) honor certain prepetition obligations related thereto, (c) maintain existing business forms, and (d) continue to perform intercompany transactions consistent with historical practice; (II) waiving the requirements of Bankruptcy Code section 345(b); and (III) granting related relief.

### Background

5.       On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant Bankruptcy Code

2

sections 1107(a) and 1108.   Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).   No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Cash Management System

I.      **Overview**

6.      In the ordinary course of business, the Debtors have historically maintained an integrated, international cash management system that provides well-established mechanisms for the collection, concentration, and disbursement of funds to operate their world-wide business, as well as the operations of their non-Debtor affiliates (the "Cash Management System").   The Cash Management System has been maintained in substantially the same form since the Debtors' refinancing of their senior secured lending facility during 2012 and is similar to those commonly employed by corporate enterprises that operate globally and are comparable to the Debtors in economic scope and geographic reach.   Indeed, large, multiple-entity businesses use such systems because of the numerous benefits provided, including the ability to (a) quickly create status reports on the location and amount of funds, thereby allowing management to track and control corporate funds, (b) ensure cash availability, and (c) reduce administrative expenses by facilitating the movement of funds.   These controls are particularly important because approximately $48 million, on average, flows through the integrated Cash Management System on a monthly basis to service the Debtors' business, including that of certain non-debtor affiliates as shown on Schedule 2.   Granting the Debtors authority to continue using the Cash Management System will facilitate a smooth transition into these chapter 11 cases.

7.      The Cash Management System has three main components: (i) cash collection, (ii) cash concentration, and (iii) cash disbursement.   Because the Debtors' business generates

3

revenue and expenses both within the United States and around the world, the Cash Management System has domestic and international features, involving all of the Debtors' operations, including non-Debtor foreign subsidiaries, and other related entities. The movement of funds through the Debtors' Cash Management System is illustrated in the charts attached hereto as **Schedule 1 and 2** annexed to **Exhibit A** attached hereto. **Schedule 1** supplies a diagram of certain interactions of bank accounts on a regional basis: (a) page one identifies accounts in North America, Latin America, and Mexico; (b) page two identifies accounts in the Asia and Pacific Region; and (c) pages three and four identify accounts in Europe, the Middle East, and Africa. While not all cash flows among the Debtors' many accounts can be captured in the diagram, the description in **Schedule 1** and below describe which accounts—including foreign accounts—are the Debtors' accounts, and, for clarification, **Schedule 2** presents a summary of cash flows to *non-Debtors* during 2014.

8.     The Cash Management System is centrally managed by the Debtors' financial personnel at their corporate headquarters located in Naples, Florida. Through the utilization of the existing Cash Management System and a comprehensive accounting system (Lawson), the Debtors are able to facilitate cash forecasting and reporting, monitor collection and manage disbursement of funds, and maintain control over the administration of the various bank accounts required to effect the collection, disbursement, and movement of cash that are vital to the Debtors' operations and management of their cash flows.

## II.     The Cash Management System

### A.     Background

9.     The Debtors maintain six (6) bank accounts in the United States (the "Domestic Bank Accounts") that are used to receive incoming payments, deposit checks, concentrate funds and make disbursements in the ordinary course of the Debtors' business. The Domestic Bank

4

Accounts are maintained at Citibank, N.A. ("Citibank") and Fifth Third Bank ("Fifth Third" and together with Citibank, collectively, the "Domestic Banks"). The Domestic Bank Accounts consist of receivable, operating, and payroll accounts, all as described in further detail below. Each of the Domestic Bank Accounts maintained by the Debtors is identified on **Exhibit 3** annexed to **Exhibit A** attached hereto.

10. As described more fully in the First Day Declaration, the Debtors business operates both domestically and internationally. The Debtors' international business operations are run by both the Debtors and the non-Debtor affiliates. With respect to their the international operations, the Debtors and their non-Debtor affiliates maintain approximately 40 (forty) bank accounts (the "Foreign Bank Accounts" and together with the Domestic Bank Accounts, collectively, the "Bank Accounts") at various foreign banks (collectively, the "Foreign Banks" and together with the Domestic Banks, collectively, the "Banks") to support their operations in Argentina, Australia, Brazil, Canada, China, Czech Republic, Denmark, France, Germany, Hong Kong, India, Italy, Japan, The Netherlands, Philippines, Poland, Singapore, South Africa, South Korea, Spain, Sweden and United Kingdom. Each of the Foreign Bank Accounts maintained by the Debtors and the non-Debtor affiliates is identified on **Exhibit 3** annexed to **Exhibit A** attached hereto and each is centrally managed by the Debtors' financial personnel at their corporate headquarters located in Naples, Florida.

11. Given the number of Domestic Bank Accounts and Foreign Bank Accounts, this Motion does not describe each and every account in detail but, rather, highlights the significant features of the Cash Management System that have been used by the Debtors prior to the commencement of these chapter 11 cases. The Cash Management System was organized to collect, concentrate, and transfer the funds generated by the Debtors' businesses and to disburse

5

the funds as necessary to satisfy the obligations of those businesses. Neither the Debtors nor their non-Debtor affiliates could function without funding through the Cash Management System. For demonstrative purposes, diagrams illustrating the flow of cash through the Cash Management System are attached hereto as **Schedules 1 and 2** annexed to **Exhibit A**. With this system in place, the Debtors are able accurately to record collections, transfers, and disbursements as they are made through the various Bank Accounts.

      B.     Domestic Bank Accounts

12.     As illustrated on **Schedule 1** annexed to **Exhibit A** attached hereto, the Cash Management System is based around the Debtors' primary operating account (acct. no. xxx9901)[3] maintained by Allen Systems Group, Inc. ("ASG, Inc.") at Citibank (the "ASG Operating Account"). The ASG Operating Account is the Debtors' principal domestic bank account and is used for all purposes related to the Debtors' business operations. The ASG Operating Account is the primary account receiving payment from thousands of customers, including (i) checks sent by customers to the Debtors' headquarters located in Naples, Florida, and deposited through scan software, and (ii) automated clear house (ACH) transfers sent directly from customers and deposited into the ASG Operating Account. The Debtors pay essentially all of their domestic expenses through the ASG Operating Account, including employee payroll. The Debtors make disbursements from the ASG Operating Account by check, wire transfer, and direct deposit (ACH) into other accounts as needed.

13.     ASG, Inc., also maintains two payroll-related accounts at Citibank in Miami, Florida, that are funded by the ASG Operating Account, including (i) an account (acct. no. xxxx0571) (the "Citibank 0571") that is used to fund the domestic employee payroll through

---

[3]    For ease of reference, this Motion refers to the Bank Accounts by their last four numbers.

either checks or direct deposit (ACH) into the employees' bank accounts, and (ii) an account (acct. no. xxxx9833) (the "Citibank 9833") which is used to fund the related tax obligations related to the Debtors' domestic payroll. In addition, ASG, Inc. maintains an account located at Citibank in Miami, Florida (acct. no. xxxx8187) (the "Citibank 8187"), which is used to fund obligations related to the Debtors' corporate debit card.

14.    A corporate debit card issued in connection with the ASG Operating Account is used to pay for, among other expenses, facilities (*e.g.*, gas, Home Depot and Costco), general procurement charges (*e.g.*, on-line supply orders), and marketing expenses (*e.g.*, event expenses) for ASG, Inc., and runs between $20,000 to $25,000 per month. The Debtors also have issued a single American Express corporate credit card in the name of ASG, Inc., for use in connection with business travel expenses.

15.    ASG Federal, Inc. ("ASG Federal") also maintains an account located at Citibank in Miami, Florida (acct. no. xxxx9875) (the "Citibank 9875"). Citibank 9875 operates solely as a depository account. Citibank 9875 primarily receives payments from customers of ASG Federal, the vast majority of which are government-related clients (*e.g.*, the General Services Administration). The funds received into Citibank 9875 are transferred to the ASG Operating Account.

16.    ASG, Inc. further maintains another domestic collection account (acct. no. xxxx 2395) (the "Fifth Third 2395") located at Fifth Third Bank in Naples, Florida ("Fifth Third"). The Fifth Third Account collects receipts from local customers located in Southwest Florida. Amounts located in the Fifth Third 2395 are transferred to the ASG Operating Account.

DOCS_DE:197448.5 05511/001

C. Foreign Bank Accounts

17.    The Debtors and their non-Debtor affiliates maintain at least one Foreign Bank Account in each country in which they operate to collect revenues generated in the local currency. These local revenues are then used to cover the expenses owing in those currencies, including payroll, supplies, taxes, and governmental fees. As set forth below, intercompany transfers from the Bank Accounts maintained by the Debtors to those maintained by the non-Debtor affiliates are critical to the operation of foreign subsidiaries and preserving the Debtors' going-concern value.

18.    The following chart summarizes the Foreign Bank Accounts maintained by the Debtors and non-Debtor affiliates:

| Bank Account | Debtor | Location | Description |
|---|---|---|---|
| **Citibank**<br><br>Account No. xxxx2004 ("Citibank 2004")<br><br>Account No. xxxx3008 ("Citibank 3008") | ASG, Inc.<br><br><br>ASG Canada ULC (non-debtor) | Canada | Citibank 2004 functions solely as a depository account for the Debtors' customers located in Canada. In general, the Debtors' Canadian customers forward payments to Citibank 2004 and then the Debtors transfer such receipts to Citibank 3008. Disbursements are made from Citibank 3008 for accounts payable and payroll. As a part of their Cash Management System, the Debtors transfer funds between the ASG Operating Account and Citibank 3008. |
| **Citibank**<br><br>Account No. xxxx4177 ("Citibank 4177")<br><br><br><br><br><br><br>Account No. xxxx4158 ("Citibank 4158") | Allen Systems Group Servicos Mexico SA de CV (entity has been dissolved)<br><br>Allen Systems Group Mexico SA de CV (entity has been dissolved) | Mexico | Citibank 4177 is a dormant account. The Debtors are in the process of closing Citibank 4177.<br><br>Citibank 4158 is a dormant account. The Debtors are in the process of closing Citibank 4158. |

DOCS_DE:197448.5 05511/001

| Bank Account | Debtor | Location | Description |
|---|---|---|---|
| **Citibank**<br><br>Account No. xxxx8019<br>("Citibank 8019") | ASG, Inc. | Australia | Citibank 8019, which is used to pay payroll-related and other taxes for the Debtors' employees located in Australia, is funded primarily by St. George 4920. However, the Debtors sometimes use funds located in the ASG Operating Account to fund Citibank 8019. |
| **Citibank**<br><br>Account No. xxxx3019<br>("Citibank 3019") | ASG, Inc. | Argentina | Citibank 3019 functions as an operating account. It accepts receipts from, and makes disbursements to, the Debtors' customers and vendors located in Argentina. However, the Debtors sometimes use funds located in the ASG Operating Account to fund Citibank 3019. |
| **Citibank**<br><br>Account No. xxxx1027<br>("Citibank 1027")<br><br>Account No. xxxx1035<br>("Citibank 1035")<br><br>Account No. xxxx1043<br>("Citibank 1043")<br><br>Account No. xxxx4232<br>("Citibank 4232")<br><br>Account No. xxxx4240<br>("Citibank 4240") | ASG, Inc. | United Kingdom | ASG, Inc. maintains five accounts at Citibank in the United Kingdom that are used primarily with respect to the Debtors' European operations. First, Citibank 1027 functions as the Debtors' primary account for transactions undertaken in the Euro currency. Citibank 1027 operates as a depository, primarily receiving funds from customers paid in Euros, and pays accounts payable, payroll and taxes across many countries that use the Euro. However, a number of countries that use the Euro currency (*e.g.*, France and Germany) require payroll to be made solely from domestic banks that are located in such countries, and therefore, the Debtors transfer funds from Citibank 1027 to separate accounts in those countries to fund the relevant payrolls.<br><br>Second, Citibank 1035 functions as the Debtors' primary account for transactions undertaken in British pounds sterling (GBP).<br><br>Third, Citibank 1043 functions as the Debtors' primary account for transactions undertaken in Swiss Francs.<br><br>Fourth, Citibank 4232 functions as the Debtors' primary account for transactions undertaken in Danish Kroner.<br><br>Fifth, Citibank 4240 functions as the Debtors' primary account for transactions undertaken in Swedish Kroner.<br><br>Citibank 1035, 1043, 4232 and 4240 are operating accounts, collecting receivables and paying accounts payable, payroll and payroll taxes. |
| **Citibank**<br><br>Account No. xxxx4003<br>("Citibank 4003")<br><br>Account No. xxxx4011<br>("Citibank 4011") | ASG, Inc. | Singapore | Citibank 4003 is a Singapore Dollar account and functions as an operating account, collecting receivables and paying accounts payable, payroll and payroll taxes. Citibank 4011 is a U.S. Dollar account and functions solely to collect receivables. The Debtors sometime transfer funds from Citibank 4011 to Citibank 1027 (in London). |
|  |  |  |  |

| Bank Account | Debtor | Location | Description |
|---|---|---|---|
| **Citibank**<br><br>Account No. xxxx3005<br>("Citibank 3005") | ASG, Inc. | Hong Kong | Citibank 3005 functions as an operating account, and it collects receivables, and pays taxes, accounts payables and payroll. |
| **Citibank**<br><br>Account No. xxxx4001<br>("Citibank 4001") | ASG, Inc. | India | Citibank 4001 is a dormant account. The Debtors are in the process of closing Citibank 4001. |
| **Citibank**<br><br>Account No. xxxx4026<br>("Citibank 4026") | ASG, Inc. | Japan | Citibank 4026 functions as an operating account, collecting receivables and paying taxes and accounts payable, but not payroll, which is paid from Bank of Tokyo 3157 (defined herein). |
| **Citibank**<br><br>Account No. xxxx9009<br>("Citibank 9009") | ASG, Inc. | Philippines | Citibank 9009 functions as an operating account, collecting receivables and paying taxes, payroll and accounts payable. |
| **Citibank**<br><br>Account No. xxxx5004<br>("Citibank 5004") | ASG, Inc. | South Africa | Citibank 5004 functions as an operating account, collecting receivables and paying taxes, payroll and accounts payable. |
| **Citibank**<br><br>Account No. xxxx0103<br>("Citibank 0103") | ASG, Inc. | Czech Republic | Citibank 0103 functions as an operating account, collecting receivables and paying taxes, payroll and accounts payable. |
| **Citibank**<br><br>Account No. xxxx1027<br>("Citibank 1027") | ASG, Inc. | Poland | Citibank 1027 functions as an operating account, collecting receivables and paying taxes, payroll and accounts payable. |
| **St. George Partnership**<br><br>Account No. xxxx4920<br>("St. George 4920") | ASG, Inc. | Australia | St. George 4920 functions as an operating account, paying payroll and accounts payable, and funds Citibank 8019 which pays for obligations related to the Debtors' non-St. George Partnership payroll in Australia. |
| **Banco Santander (f/k/a ABN-Amro Real S/A)**<br><br>Account No. xxxx8927<br>("Banco Santander 8927") | ASG do Brasil Tecnologia da Informação Ltda. (non-debtor) | Brazil | Banco Santander 8927 functions as an operating account, collecting receivables and paying taxes, payroll and accounts payable. The Debtors occasionally fund Banco Santander 8927 with funds from the ASG Operating Account. |
|  |  |  |  |

DOCS_DE:197448.5 05511/001

| Bank Account | Debtor | Location | Description |
|---|---|---|---|
| **Caixa Economica Federal**<br><br>Account No. xxxx1803 ("Caixa Economica 1803") | ASG do Brasil Tecnologia da Informação Ltda. (non-debtor) | Brazil | Caixa Economica 1803 functions solely to collect receivables from customers located in Brazil. The Debtors transfer funds from Caixa Economica 1803 to Banco Santander 8927. |
| **Standard Chartered Bank**<br><br>Account No. xxxx0961 ("Standard Chartered 0961") | ASG, Inc., through its wholly-owned, non-US entity | China | Standard Chartered 0961 exists to satisfy local Chinese requirements to allow ASG, Inc. to conduct business in China, and the only disbursements from this account are to pay *de minimis* bank fees. |
| Account No. xxxx0923 ("Standard Chartered 0923") | ASG, Inc., through its wholly-owned, non-US entity | | Standard Chartered 0923 functions as an operating account, collecting receivables and paying payroll, taxes and accounts payable. |
| Account No. xxxx0011 ("Standard Chartered 0011") | ASG, Inc. | | Standard Chartered 0011 is a dormant account. The Debtors are in the process of closing Standard Chartered 0011. |
| **Handelsbanken**<br><br>Account No. xxxx8266 ("Handelsbanken 8266") | Allen Systems Denmark (this entity is in the process of being dissolved) | Denmark | Handelsbanken 8266 functions as an operating account and collects receivables and pays taxes. The Debtors are in the process of closing Handelsbanken 8266. |
| **Barclays**<br><br>Account No. xxxx0101 ("Barclays 0101")<br><br>Account No. xxxx0000 ("Barclays 0000") | ASG, Inc. | France | Barclays 0101 operates as an operating account and Barclays 0000 collects receivables from certain customers which are transferred to Barclays 0101. Barclays 0101 collects receivables from the Debtors' other French customers and pays accounts payables, taxes, payroll and payroll taxes for the Debtors' French employees. |
| **Deutsche Bank AG**<br><br>Account No. xxxx8000 ("Deutsche Bank 8000")[4] | ASG GmbH & Co. KG (non-debtor) | Germany | Deutsche Bank 8000 is an operating account. Payroll, taxes and accounts payable are paid from Deutsche Bank 8000, which also collects receivables from German customers. |
|  |  |  |  |

---

[4]   Shown on Schedule 1 as Deutsche Bank AG 5680

| Bank Account | Debtor | Location | Description |
|---|---|---|---|
| **Deutsche Bank AG**<br><br>Account No. xxxx0694<br>("<u>Deutsche Bank 0694</u>") | Atempo Deutschland GmBH (non-debtor) | Germany | Deutsche Bank 0694 is a dormant account. |
| **Banca Intesa Spain**<br><br>Account No. xxxx0145<br>("<u>Banca Intesa 0145</u>") | ASG, Inc. | Italy | Banca Intesa 0145 functions as an operating account. Banca Intesa 0145 collects receivables and pays taxes and some accounts payables related to the Debtors' Italian customers and vendors, but not payroll which is made from Citibank 1027 (in London). |
| **Bank of Tokyo Mitsubishi**<br><br>Account No. xxxx3157<br>("<u>Bank of Tokyo 3157</u>") | ASG, Inc. | Japan | Bank of Tokyo 3157 functions as an operating account, collecting receivables and paying payroll, taxes and accounts payable related to the Debtors' Japanese operations. In addition to receivables, Bank of Tokyo 3157 is funded from the ASG Operating Account. |
| **Banco Santander (f/k/a ABN-Amro Bank NV)**<br><br>Account No. xxxx7804<br>("<u>Banco Santander 7804</u>") | ASG, Inc.[5] | Netherlands | Banco Santander 7804 is a dormant account. The Debtors are in the process of closing Banco Santander 7804. |
| **BBVA**<br><br>Account No. xxxx0345<br>("<u>BBVA 0345</u>")<br><br>Account No. xxxx2640<br>("<u>BBVA 2640</u>") | ASG, Inc. | Spain | BBVA 0345 collects receivables and pays taxes and some accounts payables to support the Debtors' operations located in Spain, but not payroll which is made from which is made from the from Citibank 1027 (in London). BBVA 2640 facilitates payment of security deposits for landlords. |
| **Handelsbanken**<br><br>Account No. xxxx4508<br>("<u>Handelsbanken 4508</u>") | ASG, Inc.[6] | Sweden | Handelsbanken 4508 functions solely as a depository account; that is, once funds build up in the Handelsbanken 4508 due receipts from the Debtors' customers in Sweden, the Debtors transfer such funds to Citibank 1027 (in London) and Citibank 4232. |
| **Banco Santander (f/k/a Banco Nossa Caixa)**<br><br>Account No. xxxx1478<br>("<u>Banco Santander 1478</u>") | ASG do Brasil Tecnologia da Informação Ltda. (non-debtor) | Brazil | Banco Santander 1478 collects receivables, and moves funds to Banco Santander 8927. |
|  |  |  |  |

---

[5]    Banco Santander 7804 is in the name of "Mobius Management Systems". ASG, Inc. is finalizing the dissolution of Mobius Management Systems.

[6]    Handelsbanken 4508 is in the name of "Arthur Allen Systems Group Sweden AB"; however, ASG, Inc. is finalizing the dissolution of Arthur Allen Systems Group Sweden AB, and ASG, Inc. has initiated the process to change the name on Handelsbanken 4508 to "Allen Systems Group, Inc."

| Bank Account | Debtor | Location | Description |
|---|---|---|---|
| **Dalian City Commercial Bank**<br><br>Account No. xxxx8476 ("<u>Dalian 8476</u>")<br><br>Account No. xxxx0000 ("<u>Dalian 0000</u>") | ASG, Inc. (through its local branch) | China | Dalian 8476 and 0000 pay taxes and accounts payables and these accounts are funded from Standard Chartered 0923. |
| **BBVA**<br><br>Account No. xxxx7440 ("<u>BBVA 7440</u>") | ASG, Inc. | Portugal | BBVA 7440 functions as an operating account.  BBVA 7440 is also used as a depository account on a very limited basis, principally paying taxes and accounts payables. |
| **BMG-Brazil**<br><br>Account No. xxxx3222 ("<u>BMG 3222</u>") | ASG, Inc. | Brazil | BMG 3222 functions solely to collect receivables from the Brazilian customers of the Debtors, and once funds build up in the account, such funds are transferred, as needed, to Citibank 1027 (in London) or Banco Santander 8927. |
| **BBVA**<br><br>Account No. xxxx6933 ("<u>BBVA 6933</u>") | Allen Systems Group Mexico (has been dissolved) | Mexico | BBVA 6933 is a dormant account.  The Debtors are in the process of closing BBVA 6933. |
| **LBBW**<br><br>Account No. xxxx3625 ("<u>LBBW 3625</u>") | visionapp GmbH (non-debtor) | Germany | LBBW 3625 is rarely used, but when in use it functions as a collection account and makes disbursements on small accounts payables.  No taxes or payroll are made from this account. |
| **Commerzbank AG**<br><br>Account No. xxxx9600 ("<u>Commerzbank 9600</u>") | visionapp GmbH (non-debtor) | Germany | Commerzbank 9600 functions as an operating account, collecting receivables and paying taxes and accounts payable. |
| **Société Générale**<br><br>Account No. xxxx4774 ("<u>Société Générale 4774</u>")<br><br>Account No. xxxx2273 ("<u>Société Générale 2273</u>") | Atempo SAS (non-debtor) | France | Société Générale 4774 and 2273 function as operating accounts, with Société Générale 4774 for Euros and Société Générale 2273 in U.S. Dollars.  Both accounts collect receivables and pay accounts payables and taxes. |

DOCS_DE:197448.5 05511/001

| Bank Account | Debtor | Location | Description |
|---|---|---|---|
| **Natwest**<br><br>Account No. xxxx1068<br>("Natwest 1068") | ASG, Inc.[7] | United Kingdom | Natwest 1068 is rarely used and maintains a small balance (under $1,000). The Debtors are in the process of closing Natwest 1068. |
| **Hana Bank**<br><br>Account No. xxxx7204<br>("Hana 7204") | Atempo Korea[8] (non-debtor) | South Korea | Hana 7204 functions as an operating account, collecting receivables and paying taxes, payroll and accounts payable. Hana 7202 handles approximately $3,000-$4,000/month in transfers. The Debtors intend to close this account. |
| **BBVA**<br><br>Account No. xxxx4970<br>("BBVA 4970") | ASG, Inc.[9] | United Kingdom | BBVA 4970 functions only to pay a small amount of monthly service fees (less than $2,000/month). |
| **Sparkasse Heidelberg**<br><br>Account No. xxxx5990<br>("Sparkasse 5990") | ASG, Inc.[10] | Germany | Sparkasse 5990 functions as an operating account. The Debtors are in the process of closing Sparkasse 5990. |

## III.    Compliance with U.S. Trustee Guidelines

19.    Both Citibank and Fifth Third are designated as authorized depositories by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), pursuant to the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "U.S. Trustee Guidelines"). Therefore the Debtors believe the Domestic Bank Accounts will be collateralized in a manner consistent with the requirements of Bankruptcy Code section 345. Additionally, the Debtors maintain that Citibank and Fifth Third Bank are each well-

---

[7]    Natwest 1068 is in the name of "Atempo UK". However, ASG, Inc. is finalizing the dissolution of Atempo UK and has initiated the process to change the name on Natwest 1068 to "Allen Systems Group, Inc." and then will close the account.

[8]    Hana 7204 is in the name of "Atempo UK". However, ASG, Inc. is finalizing the dissolution of Atempo UK and has initiated the process to change the name on Hana 7204 to "Allen Systems Group, Inc." and then will close the account.

[9]    BBVA 4970 is in the name of "NTR Global Group Ltd." However, ASG, Inc. is finalizing the dissolution of NTR Global Group Ltd. and has initiated the process to change the name on BBVA 4970 to "Allen Systems Group, Inc." and then will close the account.

[10]    Sparkasse 5990 is in the name of "Net Transmit & Receive Germany Gmbh". However, ASG, Inc. is finalizing the dissolution of Net Transmit & Receive Germany Gmbh and has initiated the process to change the name on Sparkasse 5990 to "Allen Systems Group, Inc." and then will close the account.

14

capitalized and insured by the Federal Deposit Insurance Corporation, and therefore the Debtors can maintain all of the Domestic Bank Accounts at these Domestic Banks without jeopardizing any party in interest.

## IV.   Intercompany Transactions

20.    In the ordinary course of business, the Debtors and the non-Debtor affiliates engage in routine business relationships with each other (the "Intercompany Transactions") resulting in intercompany receivables and payables (the "Intercompany Claims"). The flow of cash in connection with the Intercompany Transactions is shown on **Schedules 1 and 2** and, in general, is in excess of the Debtors' collections from those entities customers. Indeed, in connection with the daily operation of the Cash Management System (including transactions by subsidiaries without their own bank accounts), at any given time there may be Intercompany Claims owing between Debtors or between a Debtor and a non-Debtor affiliate in connection with the receipt and disbursement of funds and there may be recognitions of offsets between Debtors or between a Debtor and a non-Debtor affiliate. The Intercompany Claims are reflected as journal entry receivables and payables, as applicable, in the respective Debtors' accounting systems. The Intercompany Transactions are critical to ensuring that liquidity is available where and when needed by the Debtors and their non-Debtor affiliates.

21.    With respect to their international affiliates, the Debtors track all fund transfers electronically in their accounting system and can ascertain, trace, and account for all Intercompany Transactions. If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations could be unnecessarily disrupted to the detriment of the Debtors and their creditors and other stakeholders.

15

## V.    Bank Fees

22.    In the ordinary course of business, some of the Debtors' Banks charges, and the Debtors pay, honor, or allow the deduction from the appropriate account, certain service charges and other fees, costs, and expenses (collectively, the "Bank Fees").  Historically, the Debtors estimate that they pay approximately $60,000 in Bank Fees each month, depending on transaction volume.  The Debtors estimate that there will be approximately $60,000 in unbilled and/or uncollected prepetition Bank Fees outstanding and unsatisfied on the Petition Date (the "Prepetition Bank Fees").  To maintain the integrity of their Cash Management System, the Debtors request authority to pay the Prepetition Bank Fees, in addition to any other prepetition Bank Fees for prepetition transactions that are charged postpetition, and to continue to pay the Bank Fees in the ordinary course of business postpetition.  The Debtors also request that the Debtors' Banks be authorized to charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business.

## VI.    Business Forms

23.    As part of their Cash Management System, the Debtors utilize numerous preprinted business forms (the "Business Forms") in the ordinary course of their businesses.  To minimize expenses to their estates and avoid confusion on the part of employees, customers, vendors, and suppliers during the pendency of these chapter 11 cases, the Debtors request that the Court authorize their continued use of all preprinted correspondence and business forms (including, without limitation, letterhead, purchase orders, invoices, and preprinted checks) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession, rather than requiring the Debtors to incur the expense and delay of ordering entirely new business forms.  In accordance with Local Rule 2015-2(a), once the Debtors have exhausted their existing supply of business forms, the Debtors will reorder

16

business forms with the designation "Debtor in Possession" and the corresponding bankruptcy number on all such forms (including checks).

**Basis for Relief**

**I.    Maintaining the Existing Cash Management System Is Essential to Maximizing the Value of the Debtors' Estates**

24.    The Debtors' Cash Management System constitutes an ordinary course and essential business practice. The Cash Management System provides significant benefits to the Debtors including, among other things, the ability to: (i) control corporate funds; (ii) ensure the maximum availability of funds when and where necessary; and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information. The use of a centralized Cash Management System has historically reduced expenses by enabling the Debtors to use optimally funds within the system.

25.    The operation of the Debtors' businesses requires that the Cash Management System continue during the pendency of these chapter 11 cases. As a practical matter, because of the Debtors' corporate and financial structure, it would be extremely difficult and expensive to establish and maintain a separate cash management system for each Debtor and non-Debtor entity. Requiring the Debtors to adopt new, segmented cash management systems at this early and critical stage of these cases, or to extract the Debtors from the Cash Management System, would be expensive, create unnecessary administrative burdens, and be extraordinarily disruptive to the operation of their global network. Any such disruption would have a severe and adverse impact upon the Debtors' reorganization efforts. Consequently, maintaining the existing Cash Management System, including the Debtors' continued ability to transfer funds among

17

themselves and their Debtor and non-Debtor affiliates, is not only essential, but is in the best interest of all creditors and other parties in interest.

26.    The Debtors also seek to maintain their books and records relating to the Cash Management System to the same extent these books and records were maintained before the Petition Date.  As a result, the Debtors will continue to document and record the transactions occurring within the Cash Management System

27.    In furtherance of the foregoing, the Debtors request that all Banks at which their Bank Accounts are maintained be authorized to continue to administer those accounts as they were maintained and administered prepetition, without interruption and in the usual and ordinary course. The Banks should also be authorized to pay all checks, drafts, wires, and ACH transfers issued on the Bank Accounts for payment of any claims arising on or after the Petition Date so long as sufficient funds are in those accounts.  To effectuate the foregoing, the Debtors request that the Banks be authorized to honor all representations from the Debtors as to which checks should be honored or dishonored.   To the extent that the Debtors have directed that any prepetition checks be dishonored, they reserve the right to issue replacement checks to pay the amounts related to any dishonored checks, consistent with orders of this Court.

28.    Although the Debtors maintain their Domestic Bank Accounts as a part of an established Cash Management System, the U.S. Trustee Guidelines require debtors in possession to, among other things: (a) establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor in possession accounts; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.  These requirements

18

are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

29.     Considering, however, that the Debtors' businesses and financial affairs are complex and require the collection, disbursement, and movement of funds through their approximately 50 Bank Accounts, enforcement of this provision of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt the Debtors' operations. Accordingly, the Debtors respectfully request that the Court allow them to operate each of the Bank Accounts listed on **Exhibit 3** annexed to **Exhibit A** attached hereto as they were maintained in the ordinary course of business before the Petition Date.

30.     Continuation of the Cash Management System is permitted pursuant to Bankruptcy Code section 363(c)(1), which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." Bankruptcy Courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). Additionally, courts in this district have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (noting that maintaining an existing

cash management system allows debtors "to administer more efficiently and effectively its financial operations and assets"). Accordingly, the Debtors seek authority under section 363(c)(1) to continue the collection, concentration, and disbursement of cash pursuant to their Cash Management System.

31. The Court may exercise its equitable powers to grant the relief requested herein. Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtors' Cash Management system without interruption is vital to the Debtors' business operations and the success of these reorganization cases. Therefore, it is within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System. Based on the foregoing, the Debtors believe that maintenance of the existing Cash Management System is in the best interests of their estates and all parties in interest. Therefore, the Debtors seek authority to maintain and use their Cash Management System during their chapter 11 cases.

## II. Maintaining the Existing Cash Management System Will Not Harm Parties in Interest

32. The Debtors' continued use of their Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, avoiding administrative inefficiencies, expenses, and distraction associated with disrupting this system and minimizing delays in the payment of postpetition obligations. The Debtors respectfully submit that parties in interest will not be harmed by the Debtors' maintenance of their existing Cash Management System, including maintenance of the Bank Accounts and continuance of the Intercompany Transactions, because the Debtors have implemented appropriate mechanisms to ensure that

unauthorized payments will not be made on account of obligations incurred before the Petition Date.

33.    Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of this Court and the Debtors' financial management located at the Debtors' headquarters in Naples. Florida.  In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

## III.    Authorizing the Debtors to Continue Using Debit, Wire, and ACH Transfers Is Warranted

34.    The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  As discussed above, during normal course operations, the Debtors conduct transactions through ACH transfers and other similar methods.  If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, the Debtors may be unable to perform under certain contracts, their business operations may be unnecessarily disrupted, and their estates will incur additional costs.

## IV.    Authorizing the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted

35.    The Debtors respectfully request that the Court authorize the banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course of business.  In this regard, the banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, and other instructions and drafts payable through, drawn, or directed on such Bank Accounts after the

21

Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided that* any check, draft, or other notification that the Debtors advise the banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the banks only to the extent authorized by order of the Court.

36.     The Debtors further request that the Court authorize the banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtors also request that, to the extent a bank honors a prepetition check or other item drawn on any account either: (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, such bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

37.     Moreover, the Debtors request that the Court authorize the Debtors to pay the Prepetition Bank Fees, in addition to any other prepetition Bank Fees for prepetition transactions that are charged postpetition, and authorize the banks to: (a) continue to charge the Debtors the Bank Fees; and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business.

38.    Courts in this district have regularly waived the U.S. Trustee Guidelines on the grounds that they may be potentially disruptive to a debtor's postpetition business operations and restructuring efforts. *See, e.g., In re Mineral Park, Inc.*, No. 14-11996 (KC) (Bankr. D. Del. Aug. 27, 2014) (authorizing debtors' continued use of existing cash management system and bank accounts); *In re Source Home Entertainment, LLC,* No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014) (same); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 4, 2014) (same); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 6, 2014) (same); *In re Coldwater Creek, Inc.*, No. 14-10867 (BLS) (Bankr. D. Del. May 5, 2014) (same); *In re USEC Inc.*, No. 14-10475 (CSS) (Bankr. D. Del. Apr. 21, 2014) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Apr. 1, 2014) (same); *In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same).

## V.    The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms

39.    The Debtors' transition to chapter 11 will be smoother and more orderly, with a minimum of harm and disruption to operations, if all the Bank Accounts are continued with the same account numbers following the commencement of these cases; *provided*, *however*, that checks issued or dated before the Commencement Date will not be honored, absent a prior order of the Court.  As such, to avoid disruption of the Cash Management System and unnecessary expense, pursuant to Local Rule 2015-2(a), the Debtors request that they be authorized to continue to use their business forms (including, without limitation, preprinted checks) substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.

40.    The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their business forms substantially in the forms existing

immediately before the Petition Date.  Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), once the Debtors have exhausted their existing supply of business forms, the Debtors will reorder business forms with the designation "Debtor in Possession" and the corresponding bankruptcy number on all such forms (including checks).

41.    In other chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See, e.g., In re Mineral Park, Inc.*, No. 14-11996 (KC) (Bankr. D. Del. Aug. 27, 2014) (authorizing debtors' continued use of existing business forms); *In re Source Home Entertainment, LLC*, No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014) (same); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 4, 2014) (same); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 6, 2014) (same); *In re Coldwater Creek, Inc.*, No. 14-10867 (BLS) (Bankr. D. Del. May 5, 2014) (same); *In re USEC Inc.*, No. 14-10475 (CSS) (Bankr. D. Del. Apr. 21, 2014) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Apr. 1, 2014) (same); *In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same).[11]

**VI.    The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims Among the Debtors**

42.    The Debtors' funds move through the Cash Management System as described above and in **Schedules 1 and 2**.  At any given time, there may be Intercompany Claims owing between Debtors or between a Debtor and a non-Debtor affiliate.  Intercompany Transactions are made between and among Debtors and the non-Debtor affiliates in the ordinary course as part of

---

[11]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

the Cash Management System.    The Debtors track all fund transfers electronically in their accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described.    The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.    If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls could be disrupted to the Debtors' and their estates' detriment.    Since these transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Cash Management System, the Debtors respectfully request the authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order.

43.    The Debtors are not seeking authority through this Motion to pay amounts owing on account of prepetition Intercompany Transactions.    Rather, the Debtors are seeking authority to continue postpetition Intercompany Transactions in the ordinary course of business.    To ensure each individual Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors respectfully request, pursuant to Bankruptcy Code section 503(b)(1), that all postpetition payments between or among a Debtor and another Debtor on account of an intercompany transaction be accorded administrative expense status.    This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

44.    Similar relief has been granted in other comparable multi-debtor chapter 11 cases in this district and other districts.    *See, e.g., In re Mineral Park, Inc.*, No. 14-11996 (KC) (Bankr. D. Del. Aug. 27, 2014) (authorizing debtors to continue conducting intercompany transactions in the ordinary course and granting administrative expense priority to postpetition intercompany

claims); *In re Source Home Entertainment, LLC,* No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014) (same); *In re Energy Future Holdings Corp.,* No. 14-10979 (CSS) (Bankr. D. Del. June 4, 2014) (same); *In re GSE Environmental, Inc.,* No. 14-11126 (MFW) (Bankr. D. Del. May 6, 2014) (same); *In re Coldwater Creek, Inc.,* No. 14-10867 (BLS) (Bankr. D. Del. May 5, 2014) (same); *In re USEC Inc.,* No. 14-10475 (CSS) (Bankr. D. Del. Apr. 21, 2014) (same); *In re Longview Power, LLC,* No. 13-12211 (BLS) (Bankr. D. Del. Apr. 1, 2014) (same); *In re Dolan Co.,* No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same).

**VII.  Cause Exists to Waive the Investment and Deposit Guidelines Under Bankruptcy Code Section 345 and the U.S. Trustee Guidelines Regarding Authorized Depositories on an Interim and Final Basis**

45.     As noted above, all of the Domestic Bank Accounts used in the ordinary course of the Debtors' operations are maintained at Citibank and Fifth Third, which are well-capitalized and insured by the Federal Deposit Insurance Corporation and which are authorized depositories with the U.S. Trustee.  Accordingly, the Debtors believe such Domestic Bank Accounts will be collateralized in a manner consistent with the requirements of Bankruptcy Code section 345.

46.     Bankruptcy Code Section 345(a) authorizes deposit or investment of the money of the estate, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  Although Bankruptcy Code section 345(b) generally requires that, with respect to investments other than investments "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee approved corporate surety, the court is permitted to dispense with this undertaking "for cause." 11 U.S.C. § 345(b).

47.    The Court's ability to excuse strict performance of the deposit and investment requirements of section 345(b) "for cause" arises from the 1994 amendments to the Bankruptcy Code. The legislative history of that amendment provides as follows:

> Section 345 of the [Bankruptcy] Code governs investments of funds of bankruptcy estates. The purpose is to make sure that funds of a bankrupt (sic) that are obliged to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankruptcy estate. Under current law, all investments are required to be FDIC insured, collateralized or bonded. While this requirement is wise in the case of smaller debtors with limited funds that cannot afford a risky investment to be lost, *it can work to needlessly handcuff larger, more sophisticated debtors*. This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling In re Columbia Gas Sys., Inc., 33 F.3d 294 (3d Cir. 1994).

*In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting H.R. Rep. 103-834, 103rd Cong., 2d Sess. 224 (Oct. 4, 1994) (emphasis added); 140 Cong. Rec. H10767 (Oct. 4, 1994)).

48.    In determining whether the "cause" standard under Bankruptcy Code section 345(b) has been met, the Court should consider a "totality of the circumstances analysis," utilizing the following factors:

    a.    the sophistication of the debtor's business;

    b.    the size of the debtor's business operations;

    c.    the amount of the investments involved;

    d.    the bank ratings (Moody's Investor Service, Inc. and Standard & Poor's Financial Services LLC), of the financial institutions where the debtor in possession funds are held;

    e.    the complexity of the case;

    f.    the safeguards in place within the debtor's own business of insuring the safety of the funds;

27

g.    the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions

h.    the benefit to the debtor;

i.    the harm, if any, to the estate; and

j.    the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*Serv. Merch.*, 240 B.R. at 896.

49.    The Debtors' Foreign Bank Accounts are located at foreign, non-authorized depositories. The Debtors believe that funds held in the Foreign Bank Accounts are secure and that obtaining bonds to secure these funds, as required by section 345(b), is unnecessary in these cases. "Cause" exists under section 345(b) to waive this requirement because, among other considerations, (i) the vast majority of Debtors' funds held in the Foreign Bank Accounts are held in branches of Citibank, which is an authorized depository, and the other banks are highly rated financial institutions, (ii) the Debtors retain the right to remove funds held at the banks and establish new bank accounts as needed, (iii) the cost associated with satisfying the requirements of section 345 is burdensome; and (iv) the process of satisfying those requirements would lead to needless inefficiencies in the management of the Debtors' business. Moreover, a bond secured by the undertaking of a corporate surety would be prohibitively expensive, if such a bond were available at all.

50.    Other reasons support the finding of cause to waive the requirements under Bankruptcy Code section 345(b). The Debtors' business operations are large and complex. The Debtors operate multiple lines of business domestically and internationally that interact with each other as a cohesive whole. As noted above, approximately $48 million on average flows through the Cash Management System on a monthly basis.

51.    Moreover, and related, the Debtors are sophisticated.  The Debtors' financial affairs are complex, involving the movement of funds through their approximately 50 bank accounts and requiring daily funding requests based on a review of the prior day's presentments. The Debtors hold their funds at reputable, stable banking institutions domestically and internationally.  Additionally, the Debtors monitor their cash flows and position on a daily basis.

52.    As indicated above, requiring the Debtors to modify their Cash Management Systems to strictly adhere with the restrictions established by Bankruptcy Code section 345(b) will only distract the company's management and cause the estates to unnecessarily incur potentially substantial costs to the detriment of creditors.  Enforcement of the U.S. Trustee's requirements here would impair the Debtors' business operations and their restructuring efforts.

53.    The Debtors' Cash Management System is highly automated and computerized, which allows the Debtors, with the assistance of their financial staff located at the Debtors' headquarters and Chief Restructuring Officer, to manage cash flow needs and includes the necessary accounting controls to enable the Debtors, as well as creditors and the Court, to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable.  While the Debtors' cases are pending, the Debtors, with the assistance of their Chief Restructuring Officer, will continue to maintain and administer detailed records reflecting all transfers of funds.

54.    The Debtors maintain no investment accounts.  Moreover, any new domestic account that the Debtors open will be (a) with a bank that is (i) organized under the laws of the United States of America or any state therein and (ii) has executed, or is willing to execute immediately, a Uniform Depository Agreement with the U.S. Trustee; and (b) designated a

"Debtor in Possession" account by the relevant bank.  Additionally, the Debtors will provide the U.S. Trustee with notice of any new accounts that are opened.

55.     To the extent that the Cash Management System and related practices do not comply with the requirements of Bankruptcy Code section 345(b) and the U.S. Trustee Guidelines with respect to authorized depositories the Debtors submit that sufficient "cause" exists to waive compliance with such requirements on an interim basis for a period of ninety (90) days without prejudice to request additional extensions.

56.     First, a substantial amount of the Debtors funds located in Foreign Banks are held at Citibank which is an authorized bank depository.  While none of the other Foreign Banks in the Debtors' Cash Management System are on the U.S. Trustee's list of authorized bank depositories, they are highly rated financial institutions, and therefore, there exists little risk to the Debtors' funds in these accounts.  However, because these Foreign Bank Accounts are vital to the Debtors' Cash Management System, the Debtors submit that requiring the Debtor to transfer these funds to other banks would be crippling to the Debtors' operations, which must seamlessly operate across multiple currencies and jurisdictions.  Thus, the Debtors submit that there is cause to waive strict compliance with the U.S. Trustee's Guidelines on an interim basis.

57.     Courts in this and other Districts have authorized debtors to use their existing depository accounts, even when such accounts are located at foreign banks.  *See, e.g., In re Exide Technologies*, No. 13-11482 (KJC) (Bank D. Del. June 11, 2013) (allowing maintenance of foreign accounts); *In re Satelites Mexicanos, S.A. de C.V.*, No. 06-11868 (Bankr. S.D.N.Y. Oct. 26, 2006) (allowing maintenance of over a dozen foreign bank accounts); *In re Aerovias, Nacionales de Colombia S.A.*, No. 03-11678 (Bankr. S.D.N.Y. June 4, 2003), ECF No. 267 (allowing maintenance of over 100 foreign bank accounts).

58.     Additionally, courts in this and other District often allow debtors to maintain cash management systems which actively use foreign bank accounts on an interim basis. *See, e.g., In re Exide Technologies*, No. 13-11482 (KJC) (Bank D. Del. June 11, 2013) (allowing maintenance of cash management system using foreign accounts on an interim basis pending final hearing); *In re Marco Polo Seatrade B.V. et. al.*, No. 11-13634 (Bankr. S.D.N.Y. Aug. 12, 2012) (same); *In re Gen. Mar. Corp.*, No. 11-15285 (Bankr. S.D.N.Y. Nov. 18, 2011) (same); *In re B+H Carriers Ltd. et. al.*, No. 12-12356 (Bankr. S.D.N.Y. June 28, 2012) (same).

59.     In other large, complex chapter 11 cases, courts in this jurisdiction have found that cause exists to excuse compliance with the strict requirements of Bankruptcy Code section 345(b). *See, e.g., In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 4, 2014) (waiving certain requirements of section 345(b) on a permanent basis); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 6, 2014) (waiving certain requirements of section 345(b) on a permanent basis); *In re Coldwater Creek, Inc.*, No. 14-10867 (BLS) (Bankr. D. Del. May 5, 2014) (waiving certain requirements of section 345(b) on a permanent basis); *In re USEC Inc.*, No. 14-10475 (CSS) (Bankr. D. Del. Apr. 21, 2014) (waiving certain requirements of section 345(b) on a permanent basis); *In re Furniture Brands International, Inc.*, No. 13-12329 (CSS) (Bankr. D. Del. Sept. 30, 2013) (waiving requirements of section 345(b) on a permanent basis).

60.     Local Rule 2015-2(b) provides that "if a motion for [a waiver of the investment requirements of section 345 of the Bankruptcy Code] is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held." There are approximately 13,000 creditors in these chapter 11 cases per the Debtors' books and records. Therefore, in accordance with Local

31

Rule 2015-2(b), the Debtors request an interim waiver of the requirements of Bankruptcy Code section 345, subject to a final hearing on this Motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

61.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."   For reasons discussed above, authorizing the Debtors to maintain their Cash Management System and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases.   Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.   For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.   Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

62.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

32

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

63.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

64.    The Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Ad Hoc Committee of Pre-Petition Secured Creditors; (d) the administrative agent for the Domestic Credit Agreement and the Foreign Credit Agreement; (e) the lender and administrative agent under DIP Facility Credit Agreement (as defined in the Plan); (f) the Indenture Trustee for the Notes (each as defined in the Plan); (g) the United States Environmental Protection Agency; (h) the United States Attorney's Office for the District of Delaware; (i) the Internal Revenue Service; (j) the office of the attorneys general for the states in which the Debtors operate; (k) the Securities and Exchange Commission; (l) the Banks; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-l(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

65.    No prior motion for the relief requested herein has been made to this or any other court.

DOCS_DE:197448.5 05511/001

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B,** respectively: (I) authorizing the Debtors to: (a) continue to operate their Cash Management System, (b) honor certain prepetition obligations related thereto, (c) maintain existing business forms, and (d) continue to perform intercompany transactions consistent with historical practice; (II) waiving the requirements of Bankruptcy Code section 345(b); and (III) granting related relief.

Wilmington, Delaware
Dated: February 18, 2015

Laura Davis Jones (DE Bar No. 2436)
Michael R. Seidl (DE Bar No. 3889)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com
          mseidl@pszjlaw.com
          pkeane@pszjlaw.com

*Proposed Counsel for the*
*Debtors and Debtors in Possession*