## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Allen Systems Group, Inc., *et al.*,[1] | ) | Case No. 15-10332 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND
### FINAL ORDERS AUTHORIZING PAYMENT OF CERTAIN
### PREPETITION CLAIMS IN THE ORDINARY COURSE OF BUSINESS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (the "Motion") for entry of interim and final orders, substantially in the forms

attached hereto, respectively, as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final

Order," respectively), (i) authorizing, but not directing, the payment of the liquidated, non-

contingent, and undisputed prepetition claims of third-party creditors who will be treated as

unimpaired "Other Unsecured Claims" as defined in the *Debtors' Joint Prepackaged Chapter 11*

*Plan*, including without limitation domestic and foreign trade vendors, common carriers and

warehouse vendors, independent contractors, and service providers, as they come due in the

ordinary course of business, and (ii) granting certain related relief.  In support of this Motion, the

Debtors respectfully state as follows:[2]

### Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference* from the United States District Court for the District of Delaware,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Allen Systems Group, Inc. (4496); ASG Federal, Inc. (1773); and Viasoft International, LLC (9761).  The mailing address for all of the Debtors is: 708 Goodlette Road North, Naples, Florida 34102.

[2]     The facts and circumstances supporting this Motion are set forth in the *Declaration in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. §

157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

      2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      3.      The statutory bases for the relief requested herein are sections 105(a) and 363(b)

of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules

6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Local Rule 9013-l(m).

### Background

      4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned

cases (the "Chapter 11 Cases").  The Debtors are operating their businesses and managing their

properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural

consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule

1015(b).  No request for the appointment of a trustee or examiner has been made in the

Chapter 11 Cases, and no committees have been appointed or designated

      5.      As described more fully in the First Day Declaration, the Debtors have filed pre-

packaged Chapter 11 cases in which the Debtors seek confirmation of the Plan (as defined in the

First Day Declaration) which provides that all allowed Class 6 Claims, defined in the Plan as

2

"Other Unsecured Claims," shall be paid in full either upon the effective date of the Plan or in the ordinary course of the Debtors' business as such payment comes due. The Plan has received the overwhelming support of the Debtors' stakeholders, as reflected in the *Restructuring Support Agreement* dated as of January 13, 2015 (the "Support Agreement"). Contemporaneously herewith, the Debtors are filing a motion seeking entry of an order approving the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan* (the "Disclosure Statement"), approving the Debtors' prepetition solicitation of the Plan, and confirming the Plan, as well as a scheduling order for a combined hearing with respect to such relief.

## Payable Claims

6.      In the ordinary course of their business, the Debtors incur numerous obligations to various creditors that provide the Debtors with a variety of resources and services that are necessary for the continued operation of the Debtors' business. The Debtors estimate that, as of the Petition Date, they owe a total of approximately $6,000,000 on account of liquidated, non-contingent, and undisputed prepetition claims (the "Payable Claims") of third-party creditors who will be treated as unimpaired for purposes of the Plan,[3] including, without limitation, domestic and foreign trade vendors, common carriers and warehouse vendors, independent contractors, and service providers (the "Prepetition Creditors").[4] Further, the Debtors estimate that an additional $3,000,000 in Payable Claims will become due and owing during the pendency

---

[3]    The Debtors believe that all Payable Claims constitute "Other Unsecured Claims" (as defined in the Plan), which will be paid in full under the Plan. *See* Plan §§ 1.1(110) and 3.2(f). Nonetheless, as described below, the relief sought herein is with respect to all Payable Claims, irrespective of any Payable Claim's actual or deemed classification under the Plan, so long as such Payable Claim's status as unimpaired and entitlement to payment in full in cash under the Plan is not in dispute — *i.e.*, as an Administrative Claim, Priority Tax Claim, Secured Tax Claim, Other Secured Claim, Other Priority Claim, or Other Unsecured Claim (each as defined in the Plan).

[4]    For the avoidance of doubt, the scope of this Motion and the relief requested herein does not apply to any prepetition claim for which the Debtors seek authority to pay pursuant to a separate "first-day" motion filed by the Debtors; such claims shall not be considered "Payable Claims" for purposes of this Motion.

of the Chapter 11 Cases. Consequently, the Debtors seek authority to pay the Payable Claims in an amount not more than $9,000,000 as they become due in the ordinary course of the Debtors' business and not to accelerate the timing of payments to any holder of a Payable Claim.

7.    Given the highly competitive industry in which the Debtors operate their business, it is essential that the Debtors maintain and develop relationships with certain vendors that supply unique or essential resources and services to the Debtors. Authorization to pay the Payable Claims in the ordinary course of their business is necessary in order to minimize disruption to the Debtors' operations and to ensure uninterrupted operations and to allow for a seamless transition through these prepackaged Chapter 11 Cases, for the benefit of all parties in interest.

8.    Moreover, as described above, the Debtors, prior to the Petition Date, have solicited from the only impaired voting class under Plan, the Notes Claims, which, based upon the votes received as of the Petition Date, are overwhelming supporting the Plan. In light of the this support for the Plan demonstrated by its stakeholders, including in the Support Agreement and the results of the voting to date, the Debtors are optimistic that the Plan will be confirmed within sixty (60) days of the Petition Date. Because the Payable Claims are unimpaired under the Plan, the relief requested herein would merely expedite the treatment and distribution to the Prepetition Creditors that they would otherwise be entitled to receive upon consummation of the Plan. Given the strong likelihood that holders of the Payable Claims will be paid in full in any event, the mere timing difference is, in the Debtors' business judgment, warranted in order to avoid the risk of deteriorating relationships with suppliers, vendors, and others and to maximize the efficiency and effectiveness of their restructuring under the Plan and in the Chapter 11 Cases.

**Relief Requested**

9.      By this Motion, the Debtors seek entry of the Interim Order and Final Order, substantially in the forms attached hereto, respectively, as **Exhibit A** and **Exhibit B**, authorizing, but not directing, the payment of the liquidated, non-contingent, and undisputed prepetition Payable Claims of the Prepetition Creditors who will be treated as unimpaired for purposes of the Plan and permitted payment in full in cash, including, without limitation, domestic and foreign trade vendors, common carriers and warehouse vendors, independent contractors, and service providers, as they come due in the ordinary course of business.  On an interim basis, the Debtors seek authority to pay any amounts on account of the Payable Claims not to exceed $6,000,000.[5]

10.      The Debtors further request that the interim and final orders authorize the Debtors to pay the Payable Claims on the condition that, by accepting payment, the Prepetition Creditor agrees to: (i) maintain or reinstate trade terms during the pendency of the Chapter 11 Cases that are at least as favorable as those existing on the Petition Date; or (ii) maintain such other terms satisfactory to the Debtors in their business judgment.   The Debtors also propose that if a Prepetition Creditor, after receiving a payment on account of its Payable Claim, does not maintain or reinstate trade terms at least as favorable as those existing on the Petition Date during the pendency of the Chapter 11 Cases or does not maintain such other terms agreed to by the Debtors, then any payments of Payable Claims made to such Prepetition Creditor after the Petition Date may be, in the Debtors' discretion, either (i) deemed applied to postpetition amounts payable to such Prepetition Creditor or (ii) treated as an unauthorized postpetition transfer recoverable by the Debtors under Bankruptcy Code section 549 or other applicable law.

---

[5]    The amount that the Debtors seek authority to pay on an interim basis represents the aggregate amount of Payable Claims that are, or are estimated to become, due and owing prior to the entry of a final order for the relief sought herein.

11.    In addition, the Debtors request that the Court (i) authorize and direct all applicable financial institutions to receive, process, honor, and pay any and all checks or wire transfer requests relating to the Payable Claims, whether such checks were presented or such wire transfers were requested prior to or after the Petition Date, and (ii) schedule a hearing to consider the relief requested herein on a final basis.

### Basis for Relief

I.    **The Debtors Should be Authorized to Pay the Payable Claims Under Bankruptcy Code Sections 105(a), 363(b), 1107, and 1108**

12.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g., In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Just for Feet, Inc.,* 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc.* v. *James A. Phillips, Inc., (In re James A. Phillips, Inc.),* 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in Bankruptcy Code sections 105(a) and 363(b) support the payment of prepetition claims as provided herein.

13.    Pursuant to Bankruptcy Code section 363(b), payment of prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs,* 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). The business

judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *Integrated Res. Inc.,* 147 B.R. at 656. Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServe,* 273 B.R. at 497 (citing to Bankruptcy Code sections 1107 and 1108).

14.    In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on Bankruptcy Code section 105(a). Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See Just for Feet,* 242 B.R. at 825. Specifically, the Court may use its power under Bankruptcy Code section 105(a) to authorize payment of

prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs,* 98 B.R. at 176.

15. Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *See id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.,* 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet,* 242 B.R. at 824-25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

16. This flexible approach is particularly critical where, as here, prepetition creditors are crucial to a debtor's reorganization. In *In re Structurlite Plastics Corp.,* 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court recognized that "a bankruptcy court may exercise its equity powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" *Id.* (citations omitted). The court explained that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code." *Id.* at 932.

8

17.     Allowing the Debtors to pay the Payable Claims, pursuant to all or some of the above-referenced provisions, is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code – preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship,* 526 U.S. 434, 453 (1999). In this case, the relief sought is vital for the Debtors' successful reorganization. If the Debtors cannot pay the Prepetition Creditors, the negative impact would be almost immediate. Certain of the Prepetition Creditors, on whom the Debtors depend, would immediately withdraw services and cease to provide necessary resources. Such an occurrence would impair a successful reorganization and hamper viability following the Debtors' emergence from Chapter 11. Thus, the uninterrupted supply of resources and services, on current trade terms, and the continuing support of its vendors are imperative to the ongoing operations and viability of the Debtors.

18.     Moreover, the paramount goal of the parties in interest during the Chapter 11 Cases is protecting the value of the Debtors' business by preventing operational disruptions. The relief requested herein preserves the value of the Debtors' estates by: (i) ensuring that the Debtors have access to the resources and services that they need to continue operations and (ii) enabling the Debtors to maintain good relationships with the Prepetition Creditors; which inure to the benefit of the reorganized Debtors when they emerge from chapter 11. Furthermore, the Debtors do not seek authority to pay all Payable Claims immediately but only to pay in the ordinary course of business undisputed amounts that come due on terms consistent with prepetition practice. Thus, the Debtors submit that the relief requested is narrowly tailored to and consistent with the paramount goal of chapter 11 — "facilitating the continued operation and rehabilitation of the debtor . . ." *Ionosphere Clubs*, 98 B.R. at 176.

19.     So long as the Prepetition Creditors agree to continue supplying the Debtors under current trade terms, the Debtors will avoid unnecessary expense during the Chapter 11 Cases. Current trade terms will help the Debtors maintain their liquidity and will facilitate their ability to sustain operations while reorganizing.  Such terms also allow the Debtors to avoid the inherent operational inefficiencies of paying cash on demand and managing billing processes for numerous vendors that might require cash in advance or shorten their trade terms to less than a week.  Accordingly, pursuant to Bankruptcy Code sections 105(a) and 363(b), this Court is empowered to grant the relief requested herein.

20.     Paying the Payable Claims in the ordinary course of business renders a benefit to the Debtors' estates both monetarily and operationally by preserving liquidity and enabling the Debtors to operate smoothly during the Chapter 11 Cases.  Further, because the Payable Claims are unimpaired under the Plan, the relief requested simply provides on an expedited timetable the same treatment to which the Payable Claims are entitled under the Plan.  Because the Debtors hope to reorganize as efficiently as possible and minimize the duration of their stay in Chapter 11, the Debtors believe that, under these circumstances, approval of the requested relief is appropriate and necessary.

21.     Indeed, reflecting the recognition that payment of prepetition claims of pre-petition creditors is both critical to a debtor's ability to preserve going-concern value and to maximize creditor recovery in the context of a pre-arranged or pre-packaged plan—thereby increasing prospects for a successful reorganization—courts in this district regularly grant relief consistent with that which the Debtors are seeking in this Motion.  *See, e.g.*, *In re Unitek Global Services, Inc.*, No. 14-12471 (KG) (Bankr. D. Del. Nov. 4, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Mar. 5, 2014); *In re Sorenson Communications, Inc.*,

10

No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013); *In re Caribe Media Inc.*, No. 11-11387 (KG) (Bankr. P. Del. May 23, 2011); *In re U.S. Concrete, Inc.*, No. 10-11407 (PJW) (Bankr. D. Del. May 21, 2010); *In re Stallion Oilfield Servs. Ltd.*, No. 09-132562 (BLS) (Bankr. D. Del. Nov. 16, 2009).

22.     Given the backdrop of these prepackaged Chapter 11 Cases, the relief requested herein is appropriate inasmuch as such relief will enable the Debtors to move toward expeditious confirmation of the widely-supported Plan with the least possible disruption or harm to their business. The Debtors submit that no parties in interest will be prejudiced by the relief requested herein insofar as the Payable Claims are limited to claims that are to be unimpaired under the Plan. The relief requested merely expedites the treatment and distribution that is afforded to Payable Claims under the Plan, protects the Debtors' business, and preserves the value of the Debtors' estates. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

**II.    Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Prepetition Creditors**

23.     The Debtors further request that the Court authorize and direct all banking institutions and all other applicable financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Payable Claims, whether such checks were presented prior to or after the Petition Date. Under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the Payable Claims. As such, the Debtors believe that checks or wire transfer

11

requests, other than those relating to authorized payments, will not be honored inadvertently. The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Payable Claims to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Chapter 11 Cases. Finally, the Debtors submit that they have sufficient liquidity to pay such amounts as they become due in the ordinary course of the Debtors' business.

### The Requirements of Bankruptcy Rule 6003 are Satisfied

24.      Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to pay the Payable Claims in the ordinary course of business and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into the Chapter 11 Cases. Failure to receive such authorization and other relief during the first 21 days of the Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, to preserve the ongoing value of the Debtors' operations, and to maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

25.      Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code

12

section 365.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

26.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

27.    The Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Ad Hoc Committee of Pre-Petition Secured Creditors; (d) the administrative agent for the Domestic Credit Agreement and the Foreign Credit Agreement; (e) the lender and administrative agent under DIP Facility Credit Agreement (as defined in the Plan); (f) the Indenture Trustee for the Notes (each as defined in the Plan); (g) the United States Environmental Protection Agency; (h) the United States Attorney's Office for the District of Delaware; (i) the Internal Revenue Service; (j) the office of the attorneys general for the states in which the Debtors operate; (k) the Securities and Exchange Commission; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

13

**No Prior Request**

28.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) authorizing, but not directing, the payment of the liquidated, non-contingent, and undisputed prepetition claims of third-party creditors who will be treated as unimpaired for purposes of the Plan, including trade vendors, common carriers, independent contractors, and service providers, as they come due in the ordinary course of business; (b) granting certain related relief, as described more fully herein; and (c) granting such further relief as may be appropriate and proper.

Wilmington, Delaware
Dated: February 18, 2015

Laura Davis Jones (DE Bar No. 2436)
Michael R. Seidl (DE Bar No. 3889)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com
             mseidl@pszjlaw.com
             pkeane@pszjlaw.com

*Proposed Counsel for the*
*Debtors and Debtors in Possession*